**UNITED STATES of America,
Plaintiff,**

v.

**Joseph RIZZO, Defendant.**

**No. 95–CR–463 TCP.**

United States District Court,
E.D. New York.

June 14, 2002.

---

Burton Ryan, Jr., Garden City, NY, for Plaintiff.

Robert Fogelnest, New York City, Chris P. Termini, Scalzi & Nofi, Melville, NY, for Defendant.

### MEMORANDUM AND ORDER

PLATT, District Judge.

By a "motion" dated June 7, 2002 consisting of eleven (11) unsworn statements of defense counsel, defendant moves for an order modifying his sentence of 120 months incarceration imposed by this Court on May 31, 2002 because the sentence "was a result of technical and clear error".

Rule 35(c) of the Federal Rules of Criminal Procedure provides:

(c) Correction of Sentence by Sentencing Court. The court, acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error.

On April 12, 1996 defendant pled guilty to Count One of a four count indictment charging that the defendant and others conspired to import hashish into the United States in violation of Title 21 U.S.C. § 963 and 960(b)(1)G.

The defendant's Presentence Report, as to which "there were no defense objections" (¶ 5),[1] provides in part with respect to the defendant's participation in the conspiracy, as follows:

Agent investigation revealed that Joseph Rizzo provided warehouse storage and logistics support for Michael Johnson and Gregory Timewell. On February 13, 1993, Rizzo and two other individuals met in New York, New York, and discussed the importation of fifteen tons of hashish. Rizzo was to provide a boat captain and crew to retrieve the shipment from a point offshore. Agents advised that Rizzo arranged for the captain and crew, and that he directed the actions of at least five individuals in regard to the boat crew. He also traveled to Mexico to make arrangements for this shipment. Agents further advised that the boat suffered a mechanical failure en route to the United States and the hashish was delivered to other countries.

Subsequently, on April 14, 1995, an agent acting in an undercover capacity began telephone negotiations with Rizzo concerning a ten thousand pound delivery of marijuana to Rizzo. Later that day, the undercover met with Rizzo, and stated to Rizzo that he could supply ten thousand pounds of marijuana. Rizzo agreed to accept delivery and said that he maintained a "stash" house in Staten Island, New York.

On April 23, 1995, Rizzo advised the undercover that he expected to be contacted by the driver of the truck containing the marijuana, so that he could meet

---

1. of defense counsel's statements

the truck and lead it to the "stash" house. On April 25, 1995, agents arranged for Rizzo to meet the truck as planned. Subsequent to the truck arriving at his house, Rizzo was placed under arrest. During a search of his house, agents discovered records relating to the distribution of 25 tons (22,727 kilograms) of hashish and a minimum of 3,000 kilograms of marijuana. Agents also recovered a .45 caliber Glock semi-automatic pistol, which the defendant was not authorized to possess. He made no post-arrest statements.

For guideline purposes, Rizzo is accountable for 22,727 kilograms of hashish and a minimum of 3,000 kilograms of marijuana. Pursuant to guidance found at Application Note 10 of the Commentary to Guideline 2D1.1, the weight of the hashish is converted to a marijuana equivalent. Therefore, 22,727 kilograms of hashish are equivalent to 113,635 kilograms of marijuana. The defendant is therefore held accountable for the equivalent of 116,635 kilograms of marijuana. He also receives a three-level aggravating role adjustment since he directed the actions of the boat captain and crew. He also hired the boat crew and he was accountable for their actions.

No matter how you view the criminal charge, in essence it was a conspiracy involving 116,635 kilograms, or 128 tons, of marijuana.

Defense counsel claims that this Court was operating under mistaken impressions and understandings particularly as to the actual degree of Mr. Rizzo's involvement as being outside of the heartland with respect to cases involving such a large amount of contraband "[his word]" (¶ 8) and prevented counsel from explaining Mr. Rizzo's "peripheral involvement" with respect to the quantity of the drugs (¶ 8). The large quantity of drugs was (quoting the defense counsel's presentence letter to the Court) "derived in large part from self incriminating information provided by Mr. Rizzo concerning the unlawful activity of others." (An admission consistent with his plea of guilty to the conspiracy charge).

Nonetheless defense counsel argued in his presentence letter to the Court, in his oral argument at sentence and in his post-sentence motion that the Court prevented him from explaining that his client's "Offense Level did not accurately reflect the actual degree of Mr. Rizzo's involvement." (¶ 8)

The Court, however, was fully aware of the fact that Mr. Rizzo had pled guilty to the conspiracy and that as a co-conspirator he was fully chargeable with all the foreseeable acts of his co-conspirators which he himself explained to the government as well as the "distinction" defense counsel was trying unsuccessfully to make.

Defense counsel similarly complains about the fact that U.S. District Judge Sterling Johnson of this Court gave another co-defendant in this case, John Bennett, a sentence of five years probation. No one, including the government, has offered any reason for this action taken by Judge Johnson. Apart from the fact that this is not a ground for reduction of defendant's sentence even if the same had been imposed by the undersigned (which of course it was not), nonetheless defendant's sentence was predicated on the facts in his case namely the quantity of 128 tons of marijuana, the defendant's participation summarized above, the statutory mandatory minimum of ten years, the applicable guidelines of 262 to 327 months, the fact that defendant had two prior felony drug convictions (with a total of six criminal history points) and the government's 5K1.1 letter which caused the Court to reduce

the maximum guideline by 63% and the minimum guideline by 54%.

While the government wrote their customary non-helpful "cooperation letter" to the Court, Assistant U.S. Attorney Burton Ryan refused to make any recommendation with respect to sentence or even to suggest a lower range for a possible sentence.

If the government had wanted the Court to impose a non-custodial or some other sentence it had a full opportunity to do so both before and at the time of sentence and indeed it repeatedly refuses to do so. In virtually all cases, including this one, the government now fixes the guideline range by selecting the charge to which a defendant must plead and by virtually dictating the preliminary guidelines. There is certainly no law, of which this Court is aware, that says the government may not ask for what it wants.

SO ORDERED.